UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES MICHAEL JONES**<br><br>v.<br><br>**SELECT OILFIELD SERVICES, LLC and COX OPERATING, LLC** | **CIVIL ACTION NO. 20-CV-1177**<br><br>**SECTION "E"(1)**<br>**JUDGE MORGAN**<br><br>**MAGISTRATE VAN MEERVELD** |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Cox Operating, LLC ("Cox") hereby moves this Honorable Court to enter a summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. The undisputed material facts of this case make clear that the condition alleged by Plaintiff to have caused his injuries constituted an open and obvious danger such that Cox did not owe a legal duty to warn him of same. Absent such duty, Plaintiff is unable to establish a requisite element of his claim, warranting dismissal as a matter of law.

**I.    RELEVANT FACTUAL BACKGROUND**

This matter arises out of a claim for personal injuries allegedly sustained by Plaintiff, James Michael Jones, on May 21, 2017, while he was working for Select Oilfield Services, LLC ("Select") in Cox's Eloi Bay Field pursuant to a Master Service Agreement in effect between the defendants. Plaintiff was serving as the Captain aboard the lift boat M/V SELECT 102 while the vessel was on location servicing Cox's oil and gas production facility in the field. The facility is located in Louisiana State territorial waters and consists of a number of structures, including, but not limited to, the fixed saltwater platform that Plaintiff was traversing at the time of his incident. The vessel was owned and operated by Select at all relevant times.

1

Plaintiff claims that he was injured while assisting in the deployment of an oil containment boom following an emergency oil spill. Plaintiff alleges that he was descending a set of stairs on the fixed saltwater platform towards a lower-level weather deck when he stepped on algae, which he claims caused him to slip and fall backwards.

Plaintiff confirmed that he, along with the rest of the vessel's crew, participated in a safety meeting led by Cox production foreman, Lawrence Boyd, on the morning of the incident.[1] Plaintiff participated in a Job Safety Analysis ("JSA") specific to the tasks to be performed at the time of Plaintiff's accident.[2] The JSA indicated that the task to be performed was 'deploying a containment boom' in response to an unexpected oil spill.[3] Plaintiff assisted Cox's production employees in corralling the boom from the bottom of the saltwater platform.[4] Plaintiff was making his way back to the vessel after the platform's safety meeting when he observed Cox employees attempting to deploy the containment boom from the back of a skiff.[5] According to Plaintiff, the boom was contained in a box hooked up to the back of the skiff, which was then going to be driven out and deployed.[6] Plaintiff and his deckhand were on their way to assist in the operation when the alleged incident occurred.[7]

Plaintiff testified that, in order to assist in the deployment, he would have descended a set of stairs from the main platform, crossed a gangway connecting the saltwater platform, and then proceeded to another location.[8] Plaintiff was in the process of descending the staircase onto the weather deck of the platform when he slipped and fell and, as such, never reached the boom.[9]

---

[1] Exhibit "A" – Deposition of Plaintiff; p. 30, lines 2-15.
[2] Exhibit "A" – Deposition of Plaintiff; p. 31, lines 17-23
[3] Exhibit "A" – Deposition of Plaintiff; p. 31, lines 24-25; p. 32, lines 1-2, 11-19.
[4] Exhibit "A" – Deposition of Plaintiff; p. 32, lines 5-10; p. 34, lines 3-8.
[5] Exhibit "A" – Deposition of Plaintiff; p. 34, lines 16-24; p. 39, lines 22-25; p. 40, lines 1-7.
[6] Exhibit "A" – Deposition of Plaintiff; p. 40, lines 3-7.
[7] Exhibit "A" – Deposition of Plaintiff; p. 44, lines 21-25; p. 45, lines 1-2.
[8] Exhibit "A" – Deposition of Plaintiff; p. 45, lines 3-6.
[9] Exhibit "A" – Deposition of Plaintiff; p. 45, lines 3-8.

4860-0186-6265 V1

Plaintiff testified that he stepped off of the final step with his right foot when his foot slipped out from underneath him, resulting in him falling backwards onto the stairs.[10] According to Plaintiff, he stepped on algae present on the deck that was 'greenish black' in color.[11] Plaintiff claims that he could not see the algae at the time because there was standing water present on the deck itself that day, specifically noting that the deck was partially submerged and awash with roughly one foot of water over it.[12] Plaintiff denied that there was any defect with respect to the stairs at issue.[13] Rather, he places blame for the accident squarely on the slippery condition of the weather deck.[14]

It is important to note that Plaintiff has worked in the maritime industry for over fifteen years.[15] As such, he is particularly knowledgeable of the conditions posed by such work, including the potential for algae and other marine growth to collect on production platforms and cause slippery conditions thereon.[16] In fact, Plaintiff confirmed that he knew the deck in question was wet and presented a slipping hazard.[17] Plaintiff likewise admitted that he expected the deck to be slippery and, as a result, needed to watch his footing.[18] Perhaps most significantly, Plaintiff testified that certain hazards (such as slipping, tripping, falling, and watching your footing) exist everywhere in the maritime environment, at any given time, and no matter the work being done.[19]

Like Plaintiff, Cox production foreman Lawrence Boyd also confirmed that the weather deck was noticeably wet on the date of the incident, as it had been raining that day.[20] Boyd also

---

[10] Exhibit "A" – Deposition of Plaintiff; p. 48, lines 19-25; p. 49, lines 1-2.
[11] Exhibit "A" – Deposition of Plaintiff; p. 165, lines 23-25; p. 166, lines 1-2.
[12] Exhibit "A" – Deposition of Plaintiff; p. 49, lines 11-25; p. 50, line 1; p. 166, lines 5-14.
[13] Exhibit "A" – Deposition of Plaintiff; p. 169, lines 3-14
[14] Exhibit "A" – Deposition of Plaintiff; p. 168, lines 13-24
[15] Exhibit "A" – Deposition of Plaintiff; p. 80, lines 18-22.
[16] Exhibit "A" – Deposition of Plaintiff; p. 167, lines 17-19; p. 169, lines 19-25; p. 170, line 1.
[17] Exhibit "A" – Deposition of Plaintiff; p. 189, lines 14-19.
[18] Exhibit "A" – Deposition of Plaintiff; p. 170, lines 14-23.
[19] Exhibit "A" – Deposition of Plaintiff; p. 154, lines 19-25; p. 155, line 1.
[20] Exhibit "B" – Deposition of Lawrence Boyd; p. 22, lines 4-9.

testified that the algae on the deck was easy to see while descending the stairs in question.[21] Boyd added that algae is present on all of the weather decks in that area and cannot be prevented given their tendency to take on water at times (a fact Plaintiff himself has acknowledged).[22] In other words, the condition of the weather deck was known and expected by all who encountered it, including Plaintiff. Specifically, Boyd testified that "everybody knows those decks are slip[pery]" given that you cannot avoid the occurrence (or consequences) of such weather events.[23] To that end, Boyd confirmed that the decks are frequently wet, ultimately stating that "that is just the nature of the beast you are working in."[24]

One of the owners of Select at the time of the incident, Gregory Labeth, similarly testified that it is well-known that conditions such as those present aboard the Cox staircase and platform are dynamic, that water and other slippery substances will occasionally be present, and, as a result, they are known conditions to watch out for.[25] Labeth specifically noted that weather decks such as the one at issue are often times covered in water, resulting in the normal growth of algae and other marine life over the area.[26] As such, Labeth agreed that individuals bear responsibility for their own safety while working in such conditions.[27]

## II.   LAW AND ARGUMENT

### a. Summary Judgment Standard.

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[28] The party moving for summary judgment

---

[21] Exhibit "B" – Deposition of Lawrence Boyd; p. 22, lines 1-3.
[22] Exhibit "B" – Deposition of Lawrence Boyd; p. 30 lines 11-23; p. 31, lines 8-11.
[23] Exhibit "B" – Deposition of Lawrence Boyd; p. 60, lines 10-19.
[24] Exhibit "B" – Deposition of Lawrence Boyd; p. 60, lines 20-24.
[25] Exhibit "C" – Deposition of Gregory Labeth; p. 39, lines 5-12.
[26] Exhibit "C" – Deposition of Gregory Labeth; p. 38, lines 14-21.
[27] Exhibit "C" – Deposition of Gregory Labeth; p. 39, lines 13-19.
[28] Fed. R. Civ. P. 56(a).

"bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." *Mayet v. Energy XXI Gigs Servs., L.L.C.*, 2019 WL 4415274, at *5 (E.D. La. Sept. 16, 2019).

Thereafter, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate precisely how that evidence supports his claims." *Id*. "The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id*. "Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party." *Id*.

    **b. Louisiana Law Governs the Claims against Cox.**

Louisiana law governs Plaintiff's claims against Cox given that the alleged incident did not occur aboard the vessel, but rather it took place aboard a fixed platform located within Louisiana State territorial waters. Any liability is therefore predicated on the concepts of negligence set forth in Articles 2315 and 2317 of the Louisiana Civil Code. *Mayet, supra*, at 5. Article 2315 states, in part, that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2317 provides that persons "are responsible, not only for the damage occasioned by [their] own act, but for that which is caused by the act of persons for whom [they] are answerable, or of the things which we have in our custody."

Louisiana courts have adopted a duty-risk analysis for determining whether liability exists under the particular circumstances of a case. *Pitre v. Louisiana Tech University,* 673 So.2d 585, 589–90 (La.1996). See also, *Mayet*, at 5. The relevant inquiries are:

(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?

(2) What, if any, duties were owed by the respective parties?

(3) Whether the requisite duties were breached?

(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

(5) Were actual damages sustained?

*Id.* (internal citations omitted). Importantly, "if the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable." *Id*. at 590.

Federal District Courts in Louisiana have analogized "the duty of an offshore platform occupier to that of a landowner." *Howell v. Avante Servs., LLC*, 2013 WL 1907474, at *3 (E.D. La. May 8, 2013). To that end, the Louisiana Supreme Court has held that a "landowner owes a plaintiff a duty to discover any *unreasonably* dangerous condition and to either correct the condition or warn of its existence." *Pitre*, at 590(emphasis added). In doing so, the Court recognized that "the 'obviousness' and 'apparentness' of the complained of condition have historically been taken into consideration" when making determinations as to the potential negligence of the actors in such cases. *Id*. Thus, the proper test is not whether the owner has insured against the possibility of all accidents occurring on his premises, but rather "whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." *Id*. (citing *Shelton v. Aetna Casualty & Surety Company*, 334 So.2d 406, 410 (La.1976)).

The Louisiana Supreme Court has ultimately concluded that, "if the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Id*. at 591. In other

words, Louisiana law is clear that conditions deemed 'open and obvious' do not, as a matter of law, constitute an unreasonably dangerous condition. *Mayet*, at 5. As a result, "defendants generally have no duty to protect against open and obvious hazards." *Id*. "Summary judgment is appropriate where no legal duty is owed because a complained-of condition is open and obvious to all and therefore, not unreasonably dangerous." *Id*.

### c. Cox Had No Legal Duty to Warn Plaintiff of the Slippery Deck.

Plaintiff is unable to establish a requisite element of his claim against Cox. That is, he cannot show that Cox owed a legal duty to warn him of the condition present on the weather deck on the date of the incident. Cox submits that this is because the complained of condition (*i.e*., a partially submerged and noticeably wet deck) was open and obvious to all and, as such, it cannot be deemed so unreasonably dangerous to have triggered a legal duty to warn.

In *George v. Nabors Offshore Corp.*, 464 F. App'x 298 (5th Cir. 2012), the U.S. Fifth Circuit Court of Appeals considered the application of the "open and obvious" doctrine under Louisiana law. The plaintiff in that case was a welder who fractured his ankle while working aboard an offshore platform off the coast of Louisiana. *Id*. The plaintiff was attempting to cross a portion of the platform which was covered with coiled hoses in order to access his worksite on the date of the incident. *Id*. While doing so, Plaintiff's foot caught on one of the hoses, which caused him to fall and twist his ankle. *Id*. The defendant moved for summary judgment on the basis that the coiled hoses were open and obvious and therefore did not, as a matter of law, constitute an unreasonably dangerous condition. *Id*.

In affirming the grant of summary judgment, the Fifth Circuit agreed that "any reasonable person walking over the hoses would have realized their potential danger." *Id*. at 300. The Court further added that the plaintiff, with significant experience on offshore platforms "admitted in his

7

deposition that he saw the hoses, knew they posed a possible danger, and knew that he had to cross them with caution." *Id*. at 301.  The Court held that "the danger posed by heavy coiled hoses piled six to eight inches deep is 'obvious to all,' and was particularly obvious to [the plaintiff] considering his considerable offshore platform experience. *Id*. (internal citations omitted). As a result, the Court found that there was no duty to warn or cure the dangers posed by the open and obvious conditions.

The Fifth Circuit similarly considered the 'open and obvious' doctrine in the case of *Patterson v. Allseas USA, Inc.,* 137 F. App'x 633 (5th Cir. 2005).  There, an injured seaman had walked through a puddle of standing water before descending a set of metal stairs without using a handrail. *Id*. In reversing the decision of the trial court, the Fifth Circuit held that there was no duty to warn because the plaintiff, having walked through a puddle of water, "should have known that wet boots presented a potential hazard." *Id.* at 638.

Although *Patterson* involved the reversal of a bench trial verdict involving the duty owed by a shipowner in a Jones Act case, and not a summary judgment involving an alleged third-party tortfeasor, the same logic nevertheless applies to the facts of this case. Indeed, if the dangers of descending a stairway with wet boots have been deemed to be 'open and obvious', logic dictates that traversing over a deck awash with water is equally obvious, if not substantially more so.

This District granted summary judgment under factually similar circumstances in the case of *Pledger v. Phil Guilbeau Offshore, Inc.*, 2003 WL 2012382 (E.D. La. May 1, 2003).[29] The plaintiff in that case had allegedly slipped and fallen on algae present on the deck of defendant's vessel. The Court rejected plaintiff's argument that the danger presented by the algae was not open

---

[29] Although *Pledger* involved an analysis of the legal duties owed under Section 905(b) of the Longshore and Harbor Workers' Compensation Act, the Court's discussion of 'open and obvious' dangers is nevertheless applicable to the facts of the instant case.

8

and obvious, holding instead that the evidence established "that the algae was clearly visible and obvious…prior to the plaintiff's slip and fall." *Id.* at 3. Plaintiff's co-workers "described the algae as dark or green growths on the deck, different in color from the rest of the deck." *Id.* Moreover, the Court found that the crew "was aware of the slippery condition of the deck due to the algae, evidenced by the safety meeting that the crew conducted during which they discussed whether they could safely perform the backloading operation on the slippery deck, which occurred prior to Plaintiff's slip and fall." *Id.*

After considering the evidence, this Court ultimately held that the algae on the deck of the vessel was an open and obvious condition, and that the defendant did not breach its duty to the plaintiff. *Id.* Accordingly, the plaintiffs' claims against the vessel owner were dismissed as a matter of law.

Like *George* and *Patterson*, the undisputed evidence in this case shows that Plaintiff observed the partially submerged deck and appreciated the dangers it posed. Any reasonable person descending a partially submerged staircase onto a deck covered in water would have realized their potential danger. Additionally, Plaintiff possessed considerable experience working in the marine industry such that those dangers were particularly apparent to him. Moreover, as in the case of *Pledger*, there is witness testimony here confirming that the algae on the deck was clearly visible, and that the crew was aware of the slippery conditions. As such, any hazard present on the date of the incident was so open and obvious that it cannot, as a matter of law, constitute an unreasonably dangerous condition.

### III.   CONCLUSION

The undisputed facts of this case clearly establish that the slippery condition of the deck on the date of Plaintiff's incident constituted an open and obvious danger given the presence of

9

standing water and visible algae. It is well settled that there is no legal duty to warn of or correct such unreasonably dangerous hazards.

Cox submits that the alleged incident was entirely the result of Plaintiff's own negligence for which Cox bears no responsibility. Accordingly, his claims against Cox must fail as a matter of law.

WHEREFORE, for the reasons set forth above, Cox respectfully prays that this Honorable Court grant its Motion for Summary Judgment, dismissing Plaintiff's claims, with prejudice.

Respectfully submitted

**KEAN MILLER LLP**

 /s/ *Amanda Howard Lowe*
**KAREN WATERS SHIPMAN (#27320)**
**AMANDA L. HOWARD (#32507)**
**R. CHAUVIN KEAN (#36526)**
**GABRIEL GAI SILVA, (#38893)**
909 Poydras Street, 36th Floor
New Orleans, LA  70112
Telephone:  (504) 585-3050
Facsimile:  (504) 585-3051
**Attorneys for Cox Operating, L.L.C.**