**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES MICHAEL JONES** | **CIVIL ACTION NO. 20-CV-1177** |
| **v.** | **SECTION "E"(1)**<br>**JUDGE MORGAN** |
| **SELECT OILFIELD SERVICES, LLC and COX OPERATING, LLC** | **MAGISTRATE VAN MEERVELD** |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON INTERVENOR'S COMPLAINT**

Defendant Cox Operating, LLC ("Cox") moves this Honorable Court for a summary judgment acknowledging Intervenor's, Certain Underwriters at Lloyd's, London, subscribing to Cover Note (Unique Market Reference or "UMR") B1262SM0446416 doing business as Osprey Underwriting Agency, Ltd.'s, (hereinafter "Intervenor") waiver of subrogation as to Cox under both the Master Service Agreement by and between Cox and Select Oilfield Services, LLC ("Select") dated March 15, 2011 ("MSA") and per the Intervenor's own policy of insurance provided to Select. Cox's motion is premised on the plain waiver of subrogation language of the MSA and the Intervenor's own policy of insurance, which are enforceable under either the General Maritime Law or Texas law. Because Select contractually agreed to waive subrogation against Cox and contractually agreed to obtain insurance containing waiver of subrogation clauses against Cox, and Intervenor's own policy granted Select the right to waive subrogation on its behalf, Intervenor has no right to subrogate to Select and intervene with a claim against Cox seeking reimbursement/contribution for maintenance and cure payments made to Plaintiff, Mr. Jones. Thus, the Intervenor's claims fail as a matter of law and should be dismissed, with prejudice.

## I. RELEVANT MATERIAL FACTS AND CONTRACTUAL PROVISIONS

This matter arises out of a claim for personal injuries allegedly sustained by Plaintiff, James Michael Jones, on May 21, 2017, while he was working as a vessel captain for Select on Select's lift boat the M/V SELECT 102.

On March 1, 2011, Select and Cox entered into an MSA, which was signed by Jeff Wallace on behalf of Cox as Cox's Head of Purchasing and Asset Procurement, a true and accurate copy of the MSA is attached to the Unsworn Declaration of Mr. Wallace.[1] Cox is in the business of exploration and production of oil and gas and today, and in 2017 at the time of Mr. Jones' claimed injury, Cox owns and operates several oil and gas assets located in Eloi Bay Field and Hackberry Lake in St. Bernard Parish, Louisiana.[2] Pursuant to the MSA, Select provided Cox with the M/V SELECT 102, a liftboat owned and operated by Select, and a captain and crew, which included Plaintiff Mr. Jones, to operate the vessel and assist with Cox's operations in the Eloi Bay Field.[3] The provision of the M/V SELECT 102 and its crew are the only services Select provided to Cox in association with Cox's operations in the Eloi Bay Field at all times relevant to this lawsuit, per Cox's daily rental agreement and field cost tracker with Select under the MSA.[4] It is undisputed that Plaintiff, Mr. Jones, was serving as the Captain aboard the M/V SELECT 102 on May 21, 2017, while the vessel was on location servicing Cox's oil and gas production facility in the field.

Paragraph 8.1 of the MSA between Select and Cox addresses Select's indemnity obligations and provides that Select will release, protect, hold harmless and defend and indemnify

[1] See Unsworn Declaration of Jeff Wallace as Per 28 U.S.C. 1746, with the MSA attached there to as Exhibit "1" and the daily rental agreement and work orders for the M/V SELECT 102 attached thereto as Exhibit "2" and "3" all attached hereto *in globo* as Exhibit "A."
[2] See *Id.*
[3] See *Id.*
[4] See *Id.*

Cox from and against any and all personal injury claims by "Contractor Group," which would include Select's employee and Plaintiff, Mr. Jones, as defined in the MSA:

> **8.1 Contractor Group Indemnity**
>
> **Contractor [Select] assumes full responsibility for and agrees to release, protect, defend, indemnify and hold harmless Company Group [Cox] from and against all Losses of every kind and character arising out of bodily injury, illness, death or property damage of Contractor Group, arising out of, in connection with, incident to or resulting directly or indirectly from this Agreement or the provision of any Services, Goods or Equipment provided under this Agreement, regardless of whether caused or contributed to by the sole, joint, or concurrent negligence, strict liability, or other legal fault of Company Group, or any presence on any premises owned, lease [sic], or controlled by either party or its Group, the un-seaworthiness of any vessel, the unairworthiness of any aircraft or a pre-existing condition.**[5]

Further, Paragraphs 8.6, 9.1 and Exhibit A of the MSA address Select's insurance obligations and provide that Select was obligated to procure insurance to support its indemnity obligations as well as numerous other insurance policies, which are all listed in Exhibit A of the MSA. All such policies were to contain endorsements naming Cox as an additional insured. Paragraph 8.6 provides:

> **8.6 Indemnity Obligations**
>
> **The parties agree to support their indemnity obligations with insurance (or qualified self-insurance) in favor of the other party and its Group of at least the types and minimum amounts listed in Section 9 and Exhibit A. The parties agree that such insurance shall support, but not limit their indemnity obligations except to the extent mandated by applicable law.**[6]

Select agreed to minimum insurance requirements in Paragraph 9.1:

> **9.1 Minimum Insurance Required**
>
> **Contractor [Select] agrees to procure and maintain at its sole expense, with deductibles for its own account and with responsible insurance**

---

[5] See Unsworn Declaration of Jeff Wallace as Per 28 U.S.C. 1746, with the MSA attached there to as Exhibit "1" and the daily rental agreement and work orders for the M/V SELECT 102 attached thereto as Exhibit "2" and "3" all attached hereto *in globo* as Exhibit "A" (emphasis in original).

[6] See *Id.* (emphasis in original).

> **companies that are acceptable to Company [Cox] and authorized to do business in the jurisdiction in which the Services are to be performed during the entire term of this Agreement insurance of the types and amounts set forth in Exhibit "A."**[7]

Select agreed in Exhibit A to the MSA to procure various insurance, including Protection and Indemnity Insurance of the type provided to Select by Intervenor, and to name Cox as an additional insured under such policies and waive all rights of subrogation in favor of Cox:

> **Contractor [Select] shall procure at its sole expense for the duration of this Agreement the insurance policies and amounts outlined below with reliable insurers authorized to conduct business in all locales where the work is performed. Contractor [Select] agrees to have its insurance carrier furnish Company [Cox] with a certificate or certificates of insurance evidencing its coverage in accordance with the requirements set forth. For, but not to limit the liability and indemnity obligations assumed by Contractor [Select], Contractor [Select] shall cause its insurance company(s) to provide written proof that Company Group (as defined herein) [Cox] is listed as an additional insured on and provided a written waiver of subrogation in favor of Company Group [Cox].**[8]

Intervenor acknowledges in its Complaint for Intervention that Plaintiff Mr. Jones was at all times an employee of Select and the injuries he complains of in this lawsuit were "occasioned while in the course and scope of his employment with Select and in service of the vessel." [Rec. Doc. 54, paragraph 4]. Intervenor further acknowledges that Mr. Jones was employed by Select as a Jones Act seaman assigned to Select's vessel under time charter to Cox. [Rec. Doc. 54, paragraph 5]. As such, Mr. Jones made a claim for maintenance and cure against his employer Select, and Intervenor admits that it had in effect a marine protection and indemnity policy pursuant to which it has paid and continues to pay Mr. Jones maintenance and cure benefits. [Rec. Doc. 54, paragraphs 6 and 7]. Intervenor finally claims that as subrogee of Select, it is entitled to intervene in this lawsuit to bring a claim for reimbursement/contribution against Cox for the maintenance

---

[7] See *Id.*

[8] See *Id.*

and cure benefits paid to Mr. Jones should Cox be found either wholly or partially at fault for Mr. Jones' alleged injuries. [Rec. Doc. 54].

Intervenor produced a copy of its policy in connection with its Rule 26 Initial Disclosures on its intervention. Per Select's contractual obligation to Cox, that policy includes a "Blanket" waiver of subrogation granting Select the right to name and waive in favor of Cox as it did in the MSA:

**BLANKET ADDITIONAL ASSUREDS AND WAIVERS OF SUBROGATION (amended 17.06.2015)**

> Privilege is hereby granted the Assured [Select] to name others for whom the Assured is performing work as Additional Assureds on this Policy provided the Assured shall have exercised this option prior to loss. Privilege is also granted the Assured to release from Liability others for whom the Assured is performing operations, or who are performing operations for the Assured, provided the Assured shall have exercised this option prior to loss; and these insurers ***waive all rights of subrogation against any parties so released***. Any phraseology required to be incorporated in this Policy by parties favoured by the Assured shall be deemed to be incorporated herein, but to no greater extent than the privilege allowed by the above options.[9]

The foregoing Blanket Waiver in Intervenor's policy for Select unambiguously granted Select the right to name others as additional insureds, as Select agreed to name Cox as an additional insured in the MSA, and Intervenor agreed to waive all rights of subrogation as against those additional insureds. Thus, pursuant to the above, Select and its insurers, including Intervenor, have waived any rights of subrogation against Cox.

---

[9] See Intervenor's Policy bearing Bates numbers Select Oil {Intervention} 029-065, specifically, page 20 (Bates number 048), attached hereto as Exhibit "B" [emphasis added].

## II. LAW AND ARGUMENT

### A. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10] In determining whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[11] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[12]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, as is the case here with Intervenor's claim against Cox, the moving party may meet its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[13] The nonmoving party must then, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[14] The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial.[15]

---

[10] FED. R. CIV. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[11] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).
[12] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)).
[13] *See Celotex Corp.*, 477 U.S. at 325.
[14] *See id.* at 324.
[15] *Id.* at 325.

## B. Applicable Law and Argument

The MSA between Cox and Select includes a provision in Paragraph 15.3 providing for the application of Texas law to the MSA. Here, however, Cox submits the MSA should be governed by General Maritime Law as the MSA is essentially a vessel charter agreement and as the State of Texas does not have the requisite substantial relationship to the parties or transaction in the case.[16] Mr. Jones' accident took place on a platform in Louisiana's territorial waters, Select Oilfield Services, LLC, is a Louisiana company, and the work contemplated in the MSA was for the provision of a lift boat to work in Cox's field in the territorial waters of the State of Louisiana. Further, the U.S. Fifth Circuit recently modified and simplified its long-standing test to determine if a contract is maritime.[17] The new two-prong test asks: (1) is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters? If the answer to the that question is "yes," (2) does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?[18] The MSA here between Cox and Select satisfies the two prongs in *Larry Doiron* as Select's work for Cox was to provide services to facilitate the production of Cox's oil and gas on navigable waters in its Eloi Bay Field by providing Select's vessel the M/V SELECT 102, and its crew, including the Captain Mr. Jones. Further, the M/V SELECT 102 not only played a substantial role in Select's performance of the MSA in Cox's Eloi Bay Field—provision of the vessel was the sole purpose of the MSA with respect to Select's

---

[16] *See, e.g. Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988). The court explained, "under admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Id.* at 1517 (citing *Hale v. Co–Mar Offshore Corp.,* 588 F.Supp. 1212, 1215 (W.D. La. July 5, 1984)).

[17] *In re Larry Doiron, Inc.*, 879 F.3d 568, 576 (5th Cir.), *cert. denied sub nom. Larry Doiron, Inc. v. Specialty Rental Tools & Supply, L.L.P.*, 201 L. Ed. 2d 280 (2018).

[18] *Id.* at 576.

work in Cox's Eloi Bay Field.[19] Thus, Cox submits that General Maritime Law should govern interpretation of the MSA.

However, Cox submits that the Court does not have to determine whether Texas law or General Maritime Law governs the MSA, as under either Texas state law or General Maritime Law, the waiver of subrogation agreed to in the MSA coupled with the blanket waiver of subrogation in Intervenor's policy of insurance, are valid and enforceable as a matter of law such that this Court should grant the instant summary judgment.

The analysis of the MSA here and Intervenor's policy is rather simple under maritime law as it is well-settled that unambiguous waivers of subrogation clauses in maritime contracts are enforceable under federal maritime law.[20] While slightly more involved under Texas law, the results are nevertheless the same. In Texas, as per *Chevron U.S.A. v. Cigna,* No. 09–97–00032–CV, in order to have a valid waiver of subrogation, two conditions must be met—first the contractor must obligate itself to a waiver pursuant to an underlying contract and second, it must obtain a separate endorsement from its insurance carrier waiving those rights of subrogation per the contract.[21] In *Chevron*, John Lowe, an employee of Triple D Construction, sustained on-the-job injuries on Chevron's premises. Triple D was a subcontractor of Borinquen Insulation, Inc., and Borinquen was the general contractor of Chevron (the premises owner). The contract between

---

[19] *Id. See also Crescent Energy Services, L.L.C. v. Carrizo Oil & Gas Inc.*, 896 F.3d 350 (5th Cir. 2018); *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 682 (5th Cir. 2019), *cert. denied sub nom. Centaur, L.L.C. v. River Ventures, L.L.C.*, 206 L. Ed. 2d 826 (Apr. 20, 2020)

[20] *See, e.g. Wilson v. Florida Marine Transporters, LLC,* No. CV 18-13952, 2019 WL 6464985, at *2 (E.D. La. Dec. 2, 2019) (applying federal maritime law, he court held that the **waiver of subrogation** provision not only barred the insurance company from seeking subrogation but barred the policy owner, that is, the vessel owner, from seeking indemnity and contribution); *Lyons v. Pool Co. of Texas*, 2000-0222 (La. App. 4 Cir. 12/20/00), 781 So. 2d 569, 572 (applying federal maritime law the court found that a vessel owner could not recover its maintenance and cure expenses from a drilling contractor for the benefit of the owner's deckhand who was injured, where the owner waived all rights of subrogation against the charterer and the drilling contractor in a time charter agreement); § 5:16. Liability, contribution and indemnity, 1 Admiralty & Mar. Law § 5:16 (6th ed.).

[21] 1998 WL 472501, at *3–4 (Tex.App.-Beaumont Aug. 13, 1998, pet. denied) (not designated for publication) (enforcing waiver of subrogation clause).

the owner and general contractor required the general contractor to obtain (from all subcontractors) specified insurance coverages and endorsements, including a waiver of subrogation against the premises owner (Chevron). In compliance with the owner/general contractor agreement, the subcontractor, plaintiff's employer Triple D, obtained an insurance policy from Cigna with a waiver of subrogation provision for "[a]ny person or organization for whom the Named Insured (subcontractor) has agreed by written contract to furnish this waiver."

After Cigna paid for Lowe's injuries, it brought suit against Borinquen, the general contractor, and Chevron, the premises owner, as Triple D's subrogee. Guardian Royal Exchange, the general liability carrier of the general contractor, assumed the defense for the premises owner against Lowe's claims. Guardian Royal then paid Lowe to settle his claims. The district court ultimately granted Cigna summary judgment, effectively concluding the subcontractor (Triple D) and Cigna had not waived their subrogation rights against the premises owner (Chevron). The Beaumont Court of Appeals, however, reversed and rendered, finding the language in the owner/general contractor agreement, coupled with the waiver of subrogation provision in the insurance policy with Cigna, clearly operated to waive Cigna's right to subrogate against the premises owner-Chevron.

The contractual and policy language in *Chevron* resulting in a valid waiver of subrogation under Texas law is no more and no less ambiguous than the contractual and policy language at issue here. The contractual language in *Chevron* required procurement of insurance that would "*contain a waiver of subrogation,*" whereas the MSA between Cox and Select required Select to "procure at its sole expense for the duration of this Agreement the insurance policies and amounts outlined" in Exhibit A of the MSA with "a written waiver of subrogation in favor of Company Group [Cox]." Likewise, the blanket waiver of subrogation clause at issue in *Chevron* provided

subrogation rights were waived for "[a]ny person or organization for whom the Named Insured (Triple D) *has agreed by written contract to furnish this waiver*" and Intervenor's policy for Select here contained the Blanket waiver of subrogation where "Privilege is hereby granted the Assured [Select] to name others for whom the Assured is performing work as Additional Assureds…. and these insurers waive all rights of subrogation against any parties so released." Thus, the legal issue in *Chevron* involves contract language functionally indistinguishable from the contractual language at issue here. Thus, *Chevron* firmly supports Cox's position that if Texas law applies to the MSA, the MSA waives the subrogation rights of Select's insurer, the Intervenor here.

The terms of the MSA are straightforward. Paragraphs 8.1, 8.6, 9.1 and Exhibit A expressly and plainly provide that Select will release, protect, hold harmless and defend and indemnify Cox from and against any and all personal injury claims and will obtain insurance that names Cox as an additional insured and waives any and all rights of subrogation by those insurers against Cox, which would include waiver of the claims by Intervenor in this lawsuit. Thus, Cox submits that pursuant to the language contained in the MSA, Exhibit A thereto and, additionally, the Blanket waiver of subrogation in Intervenor's policy, Select and Intervenor have agreed to waive any claim of subrogation against Cox in the instant matter. The Intervention filed here is undoubtedly a claim of subrogation against Cox, and thus, it is improperly made and should be dismissed.

## III. CONCLUSION

There are no triable issues of fact with respect to Select and Intervenor's agreement to waive subrogation against Cox. For the foregoing reasons, the claims brought in the Intervention of Certain Underwriters at Lloyd's, London, subscribing to Cover Note (Unique Market Reference or "UMR") B1262SM0446416 doing business as Osprey Underwriting Agency, Ltd. against Cox should be dismissed, with prejudice.

Respectfully submitted

**KEAN MILLER LLP**

**KAREN WATERS SHIPMAN (#27320)**
**AMANDA L. HOWARD (#32507)**
909 Poydras Street, 36th Floor
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
**Attorneys for Cox Operating, L.L.C.**