UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES MICHAEL JONES,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1177** |
| **SELECT OILFIELD SERVICES, LLC, ET AL.,**  Defendants | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment on Intervenor's Complaint filed by Defendant Cox Operating, LLC ("Cox").[1] Intervenor Certain Underwriters at Lloyds, London, subscribing to Cover Note (Unique Market Reference or "UMR") B1262SM0446416, doing business as Osprey Underwriting Agency, Ltd., ("Lloyds") has filed an opposition.[2] Cox has filed a reply.[3] With leave of Court, Third-party Defendant U.S. Specialty Insurance Co. ("USSIC") has filed a response to Lloyds's opposition.[4] For the following reasons, Cox's motion for summary judgment is **GRANTED**.

## BACKGROUND[5]

James Michael Jones was a seaman employed by Select Oilfield Services, LLC ("Select") to work aboard a liftboat, the L/B SELECT 102.[6] Select entered into a time charter with Cox for Cox's use of the L/B SELECT 102.[7] On May 21, 2017, while Jones was working in service of the time-chartered vessel, he was injured in an incident on a platform owned by Cox.[8]

---

[1] R. Doc. 81.
[2] R. Doc. 88.
[3] R. Doc. 101.
[4] R. Doc. 99.
[5] The background facts are primarily taken from the Intervenor's complaint. R. Doc. 54.
[6] *Id.* at ¶¶ 4-5.
[7] *Id.* at ¶ 5.
[8] *Id.* at ¶¶ 4-5.

1

On April 10, 2020, Jones filed a complaint against both Select and Cox, seeking damages for negligence and unseaworthiness.[9] Select and Cox each filed crossclaims against each other, seeking contribution or indemnity.[10] Select also filed a third-party complaint against its marine general liability insurer USSIC seeking defense, indemnity, and reimbursement under the insurance policy.[11] Cox followed suit, filing a claim against USSIC, seeking defense, indemnity, and reimbursement as a named additional insured on Select's policy.[12] Finally, Lloyds, Select's marine protection and indemnity ("P&I") insurer, filed an intervention, seeking to recover from Cox maintenance and cure payments Lloyds had paid to Jones.[13] Lloyds asserts Cox was at fault for Jones's injuries.[14] All claims have been settled, except for Lloyds's claim in intervention against Cox for recovery of maintenance and cure payments it made to Jones.[15]

Cox has filed a motion for summary judgment on Lloyds's claim, arguing Lloyds has waived subrogation against Cox by the terms of the P&I policy between Lloyds and Select and by the terms of the Master Service Agreement ("MSA") between Select and Cox.[16]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "An issue is material if its resolution could affect the outcome of the action."[18]

---

[9] R. Doc. 1.
[10] R. Docs. 23, 25.
[11] R. Doc. 29.
[12] R. Doc. 47.
[13] R. Doc. 54.
[14] *Id.*
[15] R. Docs. 90, 91.
[16] R. Doc. 81.
[17] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[18] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the nonmoving party.[20] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[21]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[22] If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[23]

When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter

---

[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[21] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[22] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).
[23] *Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

of law.[24] When proceeding under the second option, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[25] The burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[26] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[27] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[28]

"[U]nsubstantiated assertions are not competent summary judgment evidence."[29] The opposing party must "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[30]

---

[24] *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[25] *Celotex*, 477 U.S. at 332–33.
[26] *Id.*
[27] *Id.* at 332–33 & n.3.
[28] *Id.*; *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).
[29] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).
[30] *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

**UNDISPUTED MATERIAL FACTS**[31]

On March 1, 2011, Select and Cox entered into an MSA, which was signed by Jeff Wallace on behalf of Cox as Cox's Head of Purchasing and Asset Procurement.[32] Cox is in the business of exploration and production of oil and gas and today, as well as in 2017 at the time of Mr. Jones' claimed injury, owned and operated several oil and gas assets located in Eloi Bay Field and Hackberry Lake in St. Bernard Parish, Louisiana.[33] Pursuant to the MSA, Select provided Cox with the M/V SELECT 102, a liftboat owned and operated by Select, and a captain and crew, which included Plaintiff Jones, to operate the vessel and assist with Cox's operations in the Eloi Bay Field.[34] The provision of the M/V SELECT 102 and its crew are the only services Select provided to Cox in association with Cox's operations in the Eloi Bay Field at all times relevant to this lawsuit.[35] Jones was serving as the Captain aboard the M/V SELECT 102 on May 21, 2017, while the vessel was on location servicing Cox's oil and gas production facility in the field.[36] Jones was employed by Select as a Jones Act seaman assigned to Select's vessel under time charter to Cox.[37] Jones made a claim for maintenance and cure against his employer Select.[38] Lloyds had in effect a marine P&I policy pursuant to which it has paid and continues to pay Jones maintenance and cure benefits.[39]

Paragraph 8.1 of the MSA between Select and Cox addresses Select's indemnity obligations and provides:

---

[31] The parties agree there are no genuine issues of material fact.
[32] R. Doc. 81-7 at ¶ 2; R. Doc. 88-3 at ¶ 2; Cox's Exhibit A.
[33] R. Doc. 81-7 at ¶ 3; R. Doc. 88-3 at ¶ 3; Cox's Exhibit A.
[34] R. Doc. 81-7 at ¶ 4; R. Doc. 88-3 at ¶ 4; Cox's Exhibit A.
[35] R. Doc. 81-7 at ¶ 5; R. Doc. 88-3 at ¶ 5; Cox's Exhibit A.
[36] R. Doc. 81-7 at ¶ 6; R. Doc. 88-3 at ¶ 6; Cox's Exhibit A.
[37] R. Doc. 81-7 at ¶ 11; R. Doc. 88-3 at ¶ 11.
[38] R. Doc. 81-7 at ¶ 12; R. Doc. 88-3 at ¶ 12.
[39] *Id.*

> 8.1 Contractor Group Indemnity
>
> Contractor [Select] assumes full responsibility for and agrees to release, protect, defend, indemnify and hold harmless Company Group [Cox] from and against all Losses of every kind and character arising out of bodily injury, illness, death or property damage of Contractor Group, arising out of, in connection with, incident to or resulting directly or indirectly from this Agreement or the provision of any Services, Goods or Equipment provided under this Agreement, regardless of whether caused or contributed to by the sole, joint, or concurrent negligence, strict liability, or other legal fault of Company Group, or any presence on any premises owned, lease [sic], or controlled by either party or its Group, the un-seaworthiness of any vessel, the unairworthiness of any aircraft or a pre-existing condition.[40]

Paragraph 8.6, Paragraph 9.1, and Exhibit to the MSA address Select's insurance obligations and provide that Select was obligated to procure insurance to support its indemnity obligations and its numerous other insurance obligations, all listed in Exhibit A of the MSA.[41] Paragraph 8.6 of the MSA provides:

> 8.6 Indemnity Obligations
>
> The parties agree to support their indemnity obligations with insurance (or qualified self-insurance) in favor of the other party and its Group of at least the types and minimum amounts listed in Section 9 and Exhibit A. The parties agree that such insurance shall support, but not limit their indemnity obligations except to the extent mandated by applicable law.[42]

Paragraph 9.1 of the MSA provides:

> 9.1 Minimum Insurance Required
>
> Contractor [Select] agrees to procure and maintain at its sole expense, with deductibles for its own account and with responsible insurance companies that are acceptable to Company [Cox] and authorized to do business in the jurisdiction in which the Services are to be performed during the entire term of this Agreement insurance of the types and amounts set forth in Exhibit "A."[43]

---

[40] R. Doc. 81-7 at ¶ 7; R. Doc. 88-3 at ¶ 7; Cox's Exhibit A1.
[41] *Id.*
[42] *Id.*
[43] *Id.*

Exhibit A to the MSA provides:

> Contractor [Select] shall procure at its sole expense for the duration of this Agreement the insurance policies and amounts outlined below with reliable insurers authorized to conduct business in all locales where the work is performed. Contractor [Select] agrees to have its insurance carrier furnish Company [Cox] with a certificate or certificates of insurance evidencing its coverage in accordance with the requirements set forth. For, but not to limit the liability and indemnity obligations assumed by Contractor [Select], Contractor [Select] shall cause its insurance company(s) to provide written proof that Company Group (as defined herein) [Cox] is listed as an additional insured on and provided a written waiver of subrogation in favor of Company Group [Cox].[44]

Lloyds's P&I insurance policy with Select includes a "Blanket" waiver of subrogation granting Select the right to name additional insureds, with respect to whom Lloyds will waive rights of subrogation:

> BLANKET ADDITIONAL ASSUREDS AND WAIVERS OF SUBROGATION
> (amended 17.06.2015)
>
> Privilege is hereby granted the Assured [Select] to name others for whom the Assured is performing work as Additional Assureds on this Policy provided the Assured shall have exercised this option prior to loss. Privilege is also granted the Assured to release from Liability others for whom the Assured is performing operations, or who are performing operations for the Assured, provided the Assured shall have exercised this option prior to loss; and these insurers waive all rights of subrogation against any parties so released. Any phraseology required to be incorporated in this Policy by parties favoured by the Assured shall be deemed to be incorporated herein, but to no greater extent than the privilege allowed by the above options.
>
> Notwithstanding the preceding provisions, no party shall be deemed an Additional Assured or favoured with a waiver of subrogation on any vessel insured hereunder which is not actually engaged or involved in the intended operations at the time of loss, if any.[45]

---

[44] R. Doc. 81-7 at ¶ 7; R. Doc. 88-3 at ¶ 7; Cox's Exhibit A1.
[45] R. Doc. 81-7 at ¶ 13; R. Doc. 88-3 at ¶ 13; Cox's Exhibit B.

## LAW AND ANALYSIS

"It is well established in this circuit that an innocent employer is entitled to indemnification from a negligent third party for payments made to an employee injured as a result of the third party's negligence."[46] However, "[a]n employer, or its insurer, may [only] assert its federal non-statutory right of subrogation or indemnification from negligent third parties for payments it has made to an injured employee, *absent a waiver of subrogation*."[47] In addition, under the rule of anti-subrogation, a "fundamental principle of insurance law[,]" is that "[a]n insurer cannot by way of subrogation recover against its insured or an additional assured any part of its payment for a risk covered by the policy."[48] "Importantly, the rule applies even when the additional assured is not covered under the policy for the specific risk at issue."[49]

It is clear from the plain and unambiguous language of the P&I policy between Lloyds and Select, as well as the MSA between Select and Cox, that Lloyds waived its rights of subrogation against Cox.[50] In the P&I policy, Lloyds granted Select the right "to name

---

[46] *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 723 (5th Cir. 1980) (citing *Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969)) (addressing indemnity for payment of maintenance and cure claims); *see also* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:35 (6th ed.), Westlaw (database updated Dec. 2021).
[47] *Lyons v. Pool Co. of Tex.*, 2000-0222, p. 4 (La. App. 4 Cir. 12/20/00), 781 So. 2d 569, 572 (emphasis added) (citing *Fontenot v. Chevron, U.S.A., Inc.*, 95-1425, p. 12 (La.7/2/96); 676 So.2d 557, 568 (Kimball, J., concurring)) (denying a claim for indemnification of maintenance and cure payments pursuant to a waiver of subrogation). Lloyds refers to its claim for indemnity from Cox as a "*Waterman*" claim, in reference to the landmark decision in *Waterman SS. Corp.*, 155 F.2d 992, 997-1001 (3d Cir. 1946), which first found such a claim available. R. Doc. 54 at ¶ 8. The Court notes waiver of subrogation was not at issue in *Waterman*.
[48] *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 521 (5th Cir. 2019) (quoting *Peavey v. M/V ANPA*, 971 F.2d 1168, 1177 (5th Cir. 1992)).
[49] *Id.* (first citing *Dow Chemical Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1044–45 (5th Cir. 1987); and then citing *Wiley v. Offshore Painting Contractors, Inc.*, 711 F.2d 602 (5th Cir.), *on reh'g*, 716 F.2d 256 (5th Cir. 1983)).
[50] Although Lloyds does not raise the issue, the Court notes choice-of-law does not affect the outcome of this case. The P&I policy between Lloyds and Select provides that it shall be governed by English law, R. Doc. 81-6 at Bates No. 54, and the MSA between Select and Cox provides it shall be governed by Texas law, R. Doc. 81-3 at Bates No. 4033. "[U]nder admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor*

8

others for whom the Assured is performing work as Additional Assureds" and to "release from liability others for whom the Assured is performing operations," and Lloyds "waive[d] all rights of subrogation against any parties so released."[51]

In the MSA between Select and Cox, Select released Cox from liability for Jones's injury and named Cox as an additional insured under the P&I policy with Lloyds. Select agreed to indemnify Cox:

> Contractor [Select] assumes full responsibility for and agrees to release, protect, defend, indemnify and hold harmless Company Group [Cox] from and against all Losses of every kind and character arising out of bodily injury, illness, death or property damage of Contractor Group, arising out of, in connection with, incident to or resulting directly or indirectly from this Agreement or the provision of any Services, Goods or Equipment provided under this Agreement, regardless of whether caused or contributed to by the sole, joint, or concurrent negligence, strict liability, or other legal fault of Company Group, or any presence on any premises owned, lease [sic], or controlled by either party or its Group, the un-seaworthiness of any vessel, the unairworthiness of any aircraft or a pre-existing condition.[52]

Under the MSA, Select agreed that "[Cox] may employ [Select] from time to time in connection with the provision of Services for the operation or construction of properties and facilities for exploration for, or the development of production of natural gas and oil."[53] MSA broadly defines "Services" as "all services, labor and work performed by Contractor [Select] for the benefit of Company [Cox] or pursuant to this Agreement or otherwise performed in connection with or without any Goods or Equipment, including

---

*Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988) (citing *Hale v. Co–Mar Offshore Corp.*, 588 F.Supp. 1212, 1215 (W.D. La. 1984)); *see also* Schoenbaum, *supra* note 46 § 5:19. The Court need not decide which law governs these agreements because the waivers of subrogation would be valid under the general maritime law, Texas law, or English law, respectively. *See, e.g.*, *Fluor W., Inc. v. G & H Offshore Towing Co.*, 447 F.2d 35, 40 (5th Cir. 1971) (general maritime law); Schoenbaum, *supra* note 46 § 5:16 (general maritime law); *Chevron U.S.A., Inc. v. Cigna Ins. Co. of Tex.*, No. 09-97-032 CV, 1998 WL 472501, at *2-4 (Tex. App. Aug. 13, 1998) (unpublished) (Texas law); *Liberty Mut. Ins. Co. (UK) Ltd. v. HSBC Bank Plc* [2002] EWCA Civ 691 [49], [59] (Eng.) (English law).
[51] R. Doc. 81-6 at Bates No. 48.
[52] R. Doc. 81-3 at Bates No. 4026. The parties agree this document is the MSA, as they both filed a copy of it. *Compare* R. Doc. 81-3 (Cox), *with* R. Doc. 88-2 (Lloyds).
[53] R. Doc. 81-3 at Bates No. 4021.

delivery thereof."[54] The definition of "Equipment" includes a "vessel . . . used or employed in connection with the Goods or Services."[55] The parties agree that, as part of its services rendered under the MSA, Select provided the M/V Select 102 along with a captain and crew to both operate the vessel and assist with Cox's operations in the Eloi Bay Field.[56] The parties also agree that the M/V Select 102 was servicing Cox's oil and gas production facility, on May 21, 2017, the date of Jones's injury, and Jones was serving as the M/V Select 102's captain.[57] In support of these facts, Jeff Wallace, the Head of Purchasing and Asset Procurement for Cox, has signed a declaration stating, "Pursuant to the MSA, Select provided Cox with the M/V SELECT 102, a liftboat owned and operated by Select, and a captain and crew, which included Plaintiff Mr. Jones, to operate the vessel and assist with Cox's operations in the Eloi Bay Field," and "[t]he provision of the M/V SELECT 102 and its crew are the only services Select provided to Cox in association with Cox's operations in the Eloi Bay Field at all times relevant."[58] Wallace also states, "Plaintiff, Mr. Jones, was serving as the Captain aboard the M/V SELECT 102 on May 21, 2017, while the vessel was on location servicing Cox's oil and gas production facility in the field."[59] Wallace cites the daily rental agreement and work order in support of his declaration.[60] Select's procurement of Jones and the M/V Select 102 is service, labor, and work, performed by Select for the benefit of Cox and thus qualifies as a Service. Jones's injury occurred while he was on site to assist with Cox's operations in the Eloi Bay Field under the MSA. Jones's injury thus qualifies as bodily injury arising out of, in connection with, incident to or

---

[54] *Id.* at Bates No. 4020.
[55] *Id.*
[56] R. Doc. 81-7 at ¶ 4; R. Doc. 88-3 at ¶ 4.
[57] R. Doc. 81-7 at ¶ 6; R. Doc. 88-3 at ¶ 6.
[58] R. Doc. 81-2 at ¶¶ 6-7.
[59] *Id.* at ¶ 8.
[60] *See generally id.*

resulting directly or indirectly from the provision of Services under the MSA's indemnity provision, and the responsibility for such injury must be borne by Select.

In support of its indemnification obligations in the MSA, Select agreed to procure insurance: "The parties agree to support their indemnity obligations with insurance (or qualified self-insurance) in favor of the other party and its Group of at least the types and minimum amounts listed in Section 9 and Exhibit A."[61] Section 9 of the MSA provides that Select shall procure insurance "of the types and amounts set forth in Exhibit 'A.'"[62] Exhibit A, in turn, specifically requires Select to "cause its insurance company(s) to provide written proof that Company Group (as defined herein) [Cox] is listed as an additional insured on and provided a written waiver of subrogation in favor of Company Group [Cox]."[63] Select procured such insurance from Lloyds, and it is undisputed that Lloyds's P&I policy covers Select's obligation to pay maintenance and cure to Jones.[64] It is clear Select exercised its rights under the P&I policy to release Cox from liability and to name it as an additional insured. As a result, Lloyds waived its rights of subrogation against Cox.

Lloyds argues the limitation clause in the P&I policy's Blanket Additional Assureds and Waivers of Subrogation provision applies.[65] The limitation clause provides,

---

[61] *Id.* at Bates No. 4028.
[62] *Id.* at Bates No. 4028-29.
[63] *Id.* at Bates No. 4037.
[64] R. Doc. 81-7 at ¶ 12; R. Doc. 88-3 at ¶ 12. Additionally, the Court also notes the P&I policy provides coverage for "all such loss and/or damage and/or expense as the Assured shall as *owners of the vessel* named herein have become liable to pay," including medical and other expenses for an injured seaman. R. Doc. 81-6 at Bates No. 36 (emphasis added). The obligation to pay maintenance and cure is the "obligation of a *shipowner* who employs seamen to care for them if they are injured or become ill." Schoenbaum, *supra* note 46 § 6:28 (emphasis added); *see also Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994) (discussing maintenance and cure as the duty of the "shipowner"). This obligation arises if the seaman was "in the service of the vessel" at the time of his injury, which may still be the case when the seaman is physically away the vessel. *See* Schoenbaum, *supra* note 46 § 6:30; *see also Warren v. United States*, 340 U.S. 523 (1951) (awarding maintenance and cure when a seaman was injured at a dance hall while on shore leave).
[65] R. Doc. 88 at 13.

11

"Notwithstanding the preceding provisions, no party shall be deemed an Additional Assured or favoured with a waiver of subrogation on any vessel insured hereunder which is not actually engaged or involved in the intended operations at the time of loss, if any."[66] Lloyds argues, because Jones was injured on a platform owned by Cox, not the liftboat L/B Select 102, the limitation clause applies.[67] As to the parties' intended operations, Select agreed to provide "Services" to Cox, which the MSA broadly defines as "all services, labor and work performed by Contractor [Select] for the benefit of Company [Cox] or pursuant to this Agreement or otherwise performed in connection with or without any Goods or Equipment, including delivery thereof."[68] Jeff Wallace describes the services rendered under the MSA as providing the M/V Select 102 along with a captain and crew to both operate the vessel and "*assist with Cox's operations in the Eloi Bay Field*."[69] Lloyds agreed with Wallace's description of its services.[70] The parties agree that the M/V Select 102 was servicing Cox's oil and gas production facility on May 21, 2017, the date of Jones's injury, and Jones was serving as the M/V Select 102's captain.[71] Because the M/V Select 102 and its crew were at Eloi Bay Field to assist with Cox's operations in the Eloi Bay Field, including the service platform, and the M/V Select 102 was actually servicing the oil and gas production facility on May 21, 2017, the M/V Select 102 was involved in the intended operations of the parties at the time Jones was injured. As the limitation clause does not apply, Lloyds's waiver of subrogation does.

Because Cox was named as an additional insured under the P&I policy and because Select released Cox from liability for Jones's injury, Lloyds has no right to recover

---

[66] R. Doc. 81-6 at Bates No. 48.
[67] R. Doc. 88 at 13.
[68] *Id.* at Bates No. 4020.
[69] R. Doc. 81-2 at ¶ 6.
[70] R. Doc. 81-7 at ¶ 4; R. Doc. 88-3 at ¶ 4.
[71] R. Doc. 81-7 at ¶ 6; R. Doc. 88-3 at ¶ 6.

from Cox through subrogation. Accordingly, summary judgment is warranted in Cox's favor on Lloyds's Intervenor's complaint.

## CONCLUSION

**IT IS ORDERED** that the Motion for Summary Judgment on Intervenor's Complaint filed by Defendant Cox Operating, LLC is **GRANTED**.

**IT IS FURTHER ORDERED** that there be judgment in favor Defendant Cox Operating, LLC and against Intervenor Certain Underwriters at Lloyds, London, subscribing to Cover Note (Unique Market Reference or "UMR") B1262SM0446416, doing business as Osprey Underwriting Agency, Ltd. on the Intervenor's complaint.[72]

**New Orleans, Louisiana, this 17th day of June, 2022.**

                                                      **SUSIE MORGAN**
                               **UNITED STATES DISTRICT JUDGE**

---

[72] R. Doc. 54. Cox's Motion for Leave to Resubmit for Decision its Motion for Summary Judgment against Plaintiff Jones is **MOOT**. R. Doc. 106.